2    200
35 SC ¹433

## FRAZER v. D'INVILLIERS.

1. An endorser "without recourse," of a treasury note which had been paid, and afterwards stolen, and put in circulation, the marks of payment having been fraudulently obliterated, is liable to his endorsee; for these words merely limit his responsibility by the law-merchant in the event of the instrument being dishonoured.
2. United States Treasury notes are negotiable instruments.

APPEAL from the Nisi Prius.

*Feb.* 3.—A treasury note in the following form:

"11 March, 1841.

"The United States promise to pay, one year after date, to COR-CORAN & RIGGS, or order, Five Hundred Dollars, with interest, at the rate of six per centum."

Was stolen after being cancelled by the United States, and the words of cancellation having been obliterated, was put in circulation, and a bonâ fide holder endorsed it to defendant's order for safety; on demand, the interest was paid by the United States, and endorsed thereon. Defendant then sold the note and endorsed it without recourse, and interest was again paid.

When the fraud was discovered by the government, and payment refused, the plaintiff sued on the endorsement.

The court gave judgment for the plaintiff.

*C. Gilpin*, for plaintiff.—The principle of Charnley *v.* Dulles, 8 Watts & Serg. 353, was, that endorsement being of an instrument not nego-

tiable, the words " without recourse" had no meaning, and that the party was liable on his implied warranty as on the sale of other chattels. There the paper was valueless by reason of a forgery; but here it is not so, for the United States, having subsequently paid interest, is liable as any person giving currency to a stolen note. Gilkeson *v.* Snyder, 8 Watts & Serg. 200. This point was collaterally decided in Knight *v.* Lanfear, New Orleans, April, 1844.

*Gerhard,* contrà.—The value of the note depends upon the United States being estopped by the acts of its agents done in ignorance; but neither of the payments of interest were inducements for the purchase by defendant, which is the principle of Gilkeson *v.* Snyder. This alone disposes of the objection; but such a possible value is not what plaintiff bargained for; especially as it cannot be enforced by suit. The rule is settled, that the instrument must be such as it was understood to be by the parties buying and selling. In Young *v.* Cox, 3 Bing. N. C. 724, the want of a stamp, which a foreign government after issue of bonds required holders to obtain on pain of having them rejected; the only effect of which, in fact, was to destroy the marketable quality on the stock exchange, was allowed as a reason for rescinding a contract. Charnley *v.* Dulles settles the effect of the endorsement, and, besides, the instrument here is a negotiable one. United States *v.* Bank United States, 2 Howard, 711; United States *v.* Bank of Metropolis, 15 Peters, 377. Hence the words of endorsement are confined to non-liability for the drawer; and the failure of consideration need not be by a fraud of the party. Jones *v.* ———, 1 Marsh. 157.

*Feb.* 24. SERJEANT, J.—Treasury notes possess the highest character of negotiability, by the express provisions of the acts of Congress authorizing their issue. For this reason, as was held by this court in Charnley *v.* Dulles, 8 Watts & Serg. 353, the words " without recourse," annexed to the defendant's endorsement, only exempt him from that liability on the note, in the case of its dishonour at maturity, to which he would otherwise be subject by the law-merchant. But they do not exempt him from the obligation he is under, in case the instrument turns out not to be genuine, to return the money paid for it by one to whom he passed it in the ordinary course of business, any more than if he had innocently passed a forged check, note, bill of exchange, or other instrument, for money paid him. In such case it is the duty of the person who passed the instrument, when its falsity is discovered, to return the money paid and take back the instrument; and if he do not, action lies. This note was put in circulation after it

had been paid and cancelled by the maker, by means of forgery, and it was a mere nullity. It was incapable of being revived and restored to validity by the mere payment of interest subsequently by the maker.

Judgment affirmed.