## Charnley *against* Dulles.

8 WS 353
29 SC 1243

8ws   353
35 SC  433

Where a certificate of deposit not negotiable is issued by a bank and afterwards sold by a broker, who endorses it without recourse, and it turns out that the endorsement of the payee was forged, the broker's liability depends upon the parol circumstances attending the sale of the note.

It is for the jury to say whether on the evidence the plaintiff took the note subject to every risk or not.

The question of laches in presenting a certificate of deposit to the bank for payment, is a mixed question of law and fact.

So also is the time of giving notice to the prior endorser.

ERROR to the District Court of the city and county of *Philadelphia.*

This was an action of assumpsit, brought by Joseph H. Dulles against Charnley & Whelen, to recover the sum of $2224.76 with interest from the 21st May 1838, in which the plaintiff declared for money had and received to his use, and the defendants pleaded *non assumpserunt.*

On the 21st May 1838, the plaintiff purchased from the defendants for $2224.76, a certificate of deposit of the Bank of the Mississippi and Alabama Railroad Company, which was in the following words.

No. 38.          Bank of the Mississippi and Alabama
                         Railroad Company.

Alexander Harris has this day deposited in this bank three thousand dollars for the use of J. S. Skinner, and payable only to his order upon the return of this certificate.

                         Z. P. WARDELL, *Cashier.*

This certificate was endorsed

Pay to the *ordre* of Henry Shroeder,
                    J. F. Skinner.

Pay Charnley & Whelen, or order,
                    Henry Shroeder.

Pay without recourse,
                    Charnley & Whelen.

Cr. Bank of Vicksburg.
                    Vburg, Mi., Feb. 18, 1839.
                    R. B. MILLIKIN, *Cashier.*

On its face was the following:

Registered thirty-eight,
     W. J. Hullock.

Three thousand dollars bearing interest ⎫
     at the rate of 6 per cent. per ann. ⎭

     Z. P. WARDELL, *Cashier.*

[Charnley v. Dulles.]

The plaintiff offered Hancock Smith, who testified as follows :—
" I was in Charnley & Whelen's office some two or three weeks
since, and there was some conversation in regard to their suit with
Mr Dulles ; they both admitted the fact of their having sold the
certificate to Mr Dulles — sold it at 20 or 30 per cent. discount.
I talked more to them of the endorsement. I can't say whose
handwriting that is (a bill was here handed to witness). They
were talking of this suit. The occasion of it was that I copied the
interrogatories to Vicksburg. I can't say I am positive as to the
discount, but there was a discount, I think between 20 or 30 per
cent. I talked with them about the endorsement on it—J. F. in-
stead of J. S. Skinner."

Being cross-examined, he said, " Mr Whelen said that he had
stated that he had informed Mr Dulles of the imperfection when
he sold him the draft—that is my impression." Being re-examined,
he said, " the difference between J. F. & J. S., that's what he re-
ferred to—he did not mention the letters — that handwriting (the
endorsement ' Pay without recourse Charnley & Whelen,' on the
certificate hereinafter set forth), is Mr Whelen's, of the firm of
Charnley & Whelen."

The plaintiff then offered to read the deposition of John S. Skin-
ner, the payee of said certificate, to which the defendants objected,
insisting that Skinner was not a competent witness, but the court
admitted the deposition, which was as follows :—" I reside in Bal-
timore. I resided in Baltimore in March 1838. I know Alexan-
der Harris. He was employed as a private clerk for me, before
he went to live at the west. He went out to live at the west as a
clerk in the Brandon bank. I employed him to collect a debt of
$3000 from Mr Alexander Falls. I have no doubt that I am the
J. S. Skinner mentioned in the body of the paper now produced
to me. I have a nephew of that name. The endorsement in the
name Skinner is not this deponent's handwriting, nor executed by
any one by his order, and if it is intended to be my name, it is a
forgery. It is not the handwriting of the other J. S. Skinner, of
whom I have spoken. I believe I know a man by the name of
Henry Schroeder. I do not know his handwriting. After the
date of the certificate above referred to, the Mississippi and Ala-
bama Railroad Company granted me a certificate of deposit for
$3000 ; this was granted to me in consequence of the certificate
above referred to being lost, and I think it was stated in the body
of it, that this certificate was lost. I am not confident whether
this new certificate was granted upon an application made by my-
self, or whether the bank issued it spontaneously, upon information
received by them from Mr Harris of the loss ; but I believe that I
applied to them, and sent to them Mr Harris's letter or a copy of
it, or a statement of the facts contained in it announcing the loss.
The new certificate I sent to Philadelphia, and it was disposed of,
and I do not know the subsequent history of it. I endorsed the

[Charnley v. Dulles.]

new certificate. I received the proceeds of the sale. I will leave the city in the afternoon, at half past three o'clock. If I did not send the letter of Alexander Harris announcing the loss to Brandon, I have it among my papers, if I have not lost or destroyed it. My papers are in various places, some in Baltimore and some at West River in Maryland. The witness says, that the initials before the name Skinner, endorsed on the certificate above referred to and produced, he thinks are F. G., intended for that; witness has a son of that name. The son's name is Frederick Gustavus. That endorsement is not the handwriting of my son, Frederick Gustavus. I shouldn't take it for any signature of his that I ever saw. I received by letter information of the deposit of funds in that bank, upon which the bank issued that certificate. I received that annunciation by letter from Harris. If in existence at all, that letter is probably at West River, where the mass of all my papers are. It is a thing that I had no interest in preserving; but I don't know that I took the trouble to turn back and destroy it. I will look for it on my return, and if found, will return the whole mass of them."

The plaintiff then read the following deposition of Alexander Harris:

I know Mr J. S. Skinner of Baltimore. I was in his employ as a private clerk, I think in the summer of 1836. I went out to the West in the fall of 1836. In the month of March, in the year 1838, I obtained from the Mississippi and Alabama Railroad Company a certificate of deposit for $3000, for the use and payable to the order of J. S. Skinner. This is the certificate now produced to me. I had previously collected the amount of $3000 for Mr J. S. Skinner in Mississippi Bank paper, and being about to proceed to the city of Baltimore, I obtained this certificate to convey it to him. On my journey from Vicksburg to Louisville I was robbed of or lost my pocket-book, in which the said certificate of deposit was contained. At the time the said certificate was lost or stolen as aforesaid, it had never been endorsed by the said J. S. Skinner nor by any other person. Soon after my pocket-book was lost or stolen, the passengers on the boat were searched, but the pocket-book was not recovered. I arrived at Louisville the next day after the loss of this certificate, and advertised the loss of my pocket-book, describing the contents, forewarning the public from negotiating the said certificate, and offering a reward for their recovery. This was advertised in the afternoon paper of that city; but fearing that the certificate might be negotiated before the paper came from press, I left written notices of my loss with several of the brokers. I wrote from Louisville to the President of the said Mississippi and Alabama Railroad Company, informing him of the loss of the certificate: since the said certificate of deposit was lost or stolen as aforesaid, I have never seen it until shown me yesterday by Mr Dulles. On my return to Mississippi, which, as well

[Charnley v. Dulles.]

as I can recollect, was about the 1st of June 1838, I met with the cashier of the Mississippi and Alabama Railroad Company at Vicksburg, and requested him to send to Mr Skinner a certificate of deposit of $3000, in place of the one which had been stolen or lost as aforesaid. He replied in substance that he would do so immediately on his return home. Mr Skinner subsequently informed me that he had received the certificate of deposit, which the cashier had promised me to send him. I should never recognise the endorsement ' J. F. Skinner' as the handwriting of the Mr J. Skinner to whose order the certificate was payable. I know nothing of the individual or the name of Henry Schroeder, whose name is endorsed on the certificate. I do not recognise the endorsement 'J. F. Skinner' as being any handwriting that I know. I am about to leave the city to-morrow morning.

Edward Law, Esq., one of the plaintiff's counsel, then testified as follows: " Previous to the commencement of this suit, on the 31st of May 1839, I went down to the defendants with this certificate, and tendered it to them and demanded the money; they refused it, and sent me a note subsequently." Witness here read the note, which was as follows:

PHILADELPHIA, May 31, 1839.

E. Law, Esq.—Sir: We have consulted with Mr Ingraham since we had the pleasure of seeing you this morning, who advises us to refer you to him for all information in regard to the matter in question.

The plaintiff then read the following testimony of R. B. Millikin and John M. Taylor, taken under commissions to Vicksburg.

R. B. Millikin, Esq., cashier of the Vicksburg Branch of the Mississippi Union Bank, deposeth as follows:

1. To the first interrogatory of the plaintiff he answers: I was acquainted with both plaintiff and defendants, during my residence in Philadelphia five years ago.

2. To the second interrogatory: I reside in Vicksburg, Mississippi, and I am cashier of the Branch of the Mississippi Union Bank at this place.

3. To the third interrogatory: I received the original certificate, a copy of which accompanies these interrogatories, and made by the Mississippi and Alabama Railroad Company, in exchange for bank notes issued by the same institution, commonly called Brandon Bank notes. After a reasonable time, I enclosed said certificate of deposit to the address of Z. P. Wardell, cashier of said Mississippi and Alabama Railroad Company, for credit of the Bank of Vicksburg, of which I was at that time the cashier. The certificate was returned to me by due course of mail, under date the 23d of February 1839, with a statement from said Z. P. Wardell, cashier of said bank, that the signature of J. S. Skinner could not be genuine (a copy of which letter accompanies this deposition,

[Charnley v. Dulles.]

marked Exhibit A). As soon after the return of said certificate as I could see John M. Taylor, Esq., from whom I received it, I informed him thereof and requested him to return me the notes of the said bank, which I had given him in exchange therefor; and he did so, and received from me said certificate.

4. To the fourth interrogatory: I have exercised an agency with respect to said certificate as described in my answer to the third interrogatory, as cashier of the Bank of Vicksburg.

5. To the fifth interrogatory: I did present said certificate to the bank which issued it, between the 18th and 23d of February 1839, on behalf of the Bank of Vicksburg, the result of which was its return as stated in my answer to the third interrogatory.

6. To the sixth interrogatory: I made no other disposition of said certificate than such as is stated in the third interrogatory.

7. To the seventh interrogatory: Said certificate was rejected by the said bank which issued it, at the time and for the reason mentioned in said third interrogatory, and fully expressed in Exhibit A; as to the further inquiries in the seventh interrogatory, I know nothing except from the information of J. M. Taylor, Esq., from whom I obtained said certificate.

8. To the eighth interrogatory: The bank named in said interrogatory was in a state of suspension and non-payment, from the time I had first any knowledge of said certificate down to the time of its rejection by the said bank, and its obligations were at a discount of from 25 to 30 per cent.

9. To the ninth interrogatory: I believe the Bank of Vicksburg to have been the creditor of the said bank which issued said certificate, at the time of its reception by me.

10. To the tenth interrogatory: I know nothing on the subject of this interrogatory.

*Lastly.* I do not know of any other matter, event, or thing, which may benefit the plaintiff in the above suit.

The following was the letter referred to by Millikin in his deposition as the paper marked Exhibit A:

Bank of the Mississippi and Alabama Railroad Company.

BRANDON, Feb. 23d, 1839.

R. B. MILLIKIN, Esq., Cashier, Vicksburg.—

Dear Sir: Your favour of the 18th inst. is at hand, and enclosed I return you the enclosed certificate 38. It was lost and never came to J. S. Skinner's hands, or whose signature on the back cannot be genuine.

We have paid the amount to Mr Skinner.

Yours respectfully.

Z. P. WARDELL, *Cashier.*

John M. Taylor, Esq., deposeth as follows:

[Charnley v. Dulles.]

1. To the first interrogatory of the plaintiff he answers : I know the plaintiff, and have known him between three and four years, as well as I remember.    I do not know the defendants.

2. To the second interrogatory : I reside at present near Clinton, in Hinds county, in this State, and am an attorney at law.

3. To the third interrogatory : I know this mark, with regard to the certificate, to which the third interrogatory refers.    About the 1st of November 1838, it was placed in my hands by C. S. Tarpley, with whom I was then in partnership in the practice of the law, it having been previously remitted to him by the plaintiff, as I understood.    I resided then in the city of Vicksburg, Mississippi, and the intention was that I should dispose of it to the best advantage for the plaintiffs.    Not being able to sell it for cash at a price that satisfied me, I endeavoured to vest it in the promissory notes of individuals at par, and did purchase one note for $1100, and another for $533.    To enable me to pay for these notes, it was necessary to get the certificate changed or converted into smaller paper.    I applied to Mr R. B. Millikin, who was then the cashier of the Bank of Vicksburg, and requested him to give me Brandon Bank notes for the certificate ; at what time previously this was done, I cannot say.    I think I had used Brandon Bank notes, which I held, in the purchase of the promissory notes, and got the certificate changed to reimburse the Brandon money which I had thus used.    My belief is that it was some time in the month of February 1839 that I made the exchange with Mr Millikin. Some days after the exchange, I cannot remember precisely how many, Mr Millikin applied to me to take back the certificate and return him the Brandon notes, alleging that he had forwarded the certificate to the bank from which it had issued, and that it had been returned to him by the cashier of that bank, who informed him that the certificate had been lost, had never come to the hands of J. S. Skinner, and whose signature on the back of the certificate could not be genuine, and that the bank had paid the amount of the certificate to Mr Skinner ; whereupon I received back the certificate, and refunded to Mr Millikin the amount in Brandon Bank paper ; and as I expected to set out in the course of a very few days to the city of Philadelphia, on pressing and important business, and to reach there as soon as possible, I thought it the safest and best way, and probably as speedy as any other, of advising the plaintiff of the spuriousness of the endorsement of Mr Skinner's name, and of returning the certificate to him, to take it with me. I did set out to Philadelphia early in March 1839, on the 7th of that month, I think.    I was unexpectedly detained one or two days in New Orleans, and as much as a day by high waters in Georgia, but went immediately on to Philadelphia ; and soon after reaching there, as early as the next day, I feel satisfied, being about the last day of March or the first day of April 1839, I delivered the certificate to the plaintiff, and informed him of the cir-

[Charnley v. Dulles.]

cumstances of the endorsement of the name of J. S. Skinner, which are before stated in this answer.

4. To the fourth interrogatory : — I have exercised an agency, as is stated in my answer to the last interrogatory.   My instructions were to dispose of the certificate to the best advantage, according to my discretion.

5. To the fifth interrogatory : — I did not present such certificate myself to the bank that issued it, and have no knowledge of the present action except as stated in my answer to the third interrogatory.

6. To the sixth interrogatory : — I refer to my answer to the third interrogatory as containing my answer to this.

7. To the seventh interrogatory : — With regard to the honouring or rejecting of said certificate by the bank that issued it—the time it was rejected—on what account it was rejected, and where it had been in the mean time, I refer to my answer to the third interrogatory.   I did not demand payment of it at the bank, because Mr Tarpley, who lived nearer to the bank than I did, had had it in his possession for some time before I received it ; because I knew the bank was in a state of suspension, that it was paying none of its debts ; had no suspicion that there had been anything improper either in the issuing or endorsing of the certificate, and considered it totally useless to make any application to the bank with respect to it.

8. To the eighth interrogatory : — It was in a state of suspension and non-payment for a considerable time before I knew anything of the certificate, down to the time of its rejection by the bank, and has been ever since.   The obligations of the bank, as well as I recollect, sold in the market at the time I received the certificate at a discount of from twenty-five to thirty per cent., and continued gradually to depreciate from that time.

9. To the ninth interrogatory : — I do not know whether the Bank of Vicksburg was at that time the creditor or debtor bank to the bank that issued the certificate.

10. To the tenth interrogatory : — My answer to this is contained in my answer to the third interrogatory.

Lastly. I do not remember of any other matter, event or thing which may be advantageous to the plaintiffs in the above suit.

The plaintiff then gave in evidence a bill rendered by the defendants, in the following words : —

Sold by order of Joseph H. Dulles, Esq.
By Charnley & Whelen.

| | | |
|---|---|---:|
| 1838, May 25, draft on New York, - - - - - | | $1492.54 |
| 1⅜ from   - - - | | 20.52 |
| Deduct balance due, - - - - - - | | **1513.06** |

[Charnley v. Dulles.]

$1513.06

On certificate deposited $3000 Brandon

Mississippi,  - - - - -  1430  ⎱
As interest,  - - - - -    1.19  ⎰  - - -  1431.19
                                              ————————
                     Due J. H. D.  - - -     81.87
     Pay. rec'd.              CHARNLEY & WHELEN,
                                   pr. D. Whelen.

It was admitted by the plaintiff that both the plaintiff and defendants were of respectability and character, and no fraud whatever in the transaction was imputed to the defendants.

, No testimony or evidence was given on the part of the defendants.

The judge in his charge, among other things, told the jury that, in the absence of any special agreement between the parties, the law implied a warranty, on the part of the sellers of this certificate, that they had a good title thereto.

That the law had assigned no particular period within which the certificate ought to have been presented for payment to the bank; nor had it fixed any period after knowledge of the forgery within which the plaintiff was bound to communicate this fact to the defendants. That the certificate was not like a bank note, in regard to which it had been decided that the retention by the person who had received a counterfeit bank note for six months after he knew it was counterfeit, was a bar to a recovery of what it purported to be worth, from the person by whom it had been paid. That the certificate had endorsed upon it the name of the person by whom it was transferred directly to the defendants. That the defendants had not shown that they had made any efforts to find this person, nor have they proved any loss sustained for want of an earlier communication of the forgery than was made. That it was for the jury to consider whether, under the circumstances, there had been gross negligence on the part of the plaintiffs, either in respect to the long detention of the certificate before presentment to the bank, or in regard to the communication of the fact, when known to them, of the forgery of Skinner's name.

Errors assigned : —

1. That the judge charged that the law, in the absence of any special agreement, implied a warranty on the part of the sellers of the certificate that they had a good title thereto.

2. That the judge charged that the law had assigned no particular period within which the certificate ought to have been presented for payment to the bank, nor had it fixed any period after the knowledge of the forgery within which the plaintiff was bound to communicate this fact to the defendants; that the certificate was not like a bank note, in regard to which it had been determined that the retention by a person who had received a counter-

[Charnley v. Dulles.]

feit bank note for six months after he knew it was counterfeit, was a bar to a recovery of what it purported to be worth from the person by whom it had been paid. That the certificate had endorsed upon it the person by whom it was transferred directly to the defendants; that the defendants had not shown that they had made any efforts to find this person, nor have they proved any loss sustained for want of an earlier communication of the forgery than was made. That it was for the jury to consider whether, under all the circumstances, there had been gross negligence on the part of the plaintiffs, either in respect to the long detention of the certificate before presentment to the bank, or in regard to the communication of the fact when known to them, of the forgery of Skinner's name.

The case was argued by

*Ingraham* and *Meredith,* for the plaintiffs in error.
*Law* and *Hubbell,* contra.

The opinion of the Court was delivered by

Sergeant, J.—The decisions in this and other courts seem to have established the rule that a party selling as his own, personal property of which he is in possession, warrants the title to the thing sold; and that if, by reason of defect of title, nothing passes, the purchaser may recover back his money, though there be no fraud or warranty on the part of the vendor. This doctrine is held to apply to choses in action, as well as other descriptions of personal property; and therefore if one innocently sell or transfer for value a bank note, negotiable note, bond, or other instrument, and it turns out that the instrument is forged, so that it is worthless in the hands of the transferee, the latter may recover back again the value given for it on the implied warranty of genuineness. This being the general principle, the question arises, what is the effect of a special or modified endorsement of a note by the vendor, " pay without recourse ?" Ordinarily, the effect of such endorsement of a negotiable instrument is, that the endorser is not to be liable for the payment of the note, in case of its dishonour at maturity, as he would be, by the law merchant, on an unqualified endorsement: but it goes no further; it does not exempt him if the note be forged. Where, however, the note is not a negotiable instrument, the endorser is not responsible as such, though his endorsement be absolute and unqualified. And that is the case before us; for an instrument of the kind in question was decided by this court, in *Patterson* v. *Poindexter,* (6 *Watts & Serg.* 227), to be merely a certificate of deposit, transferable by endorsement which did not render the endorser liable for its payment. The words " without recourse," therefore, in the present case, have of themselves no legal meaning or operation, since the position of these parties is the same with or without them. In a

VIII. — 46          2 F

[Charnley v. Dulles.]

case of this description we must look to the understanding of the parties as to the design with which they were used; and where there is parol evidence of what passed at the time, it must be considered in connection with the writing, to explain the transaction. Evidence was given at the trial that the defendants informed the plaintiff of the imperfection of the endorsement, and of the difference between the name of the payee, J. S. Skinner, and the endorsement, J. F. Skinner. It was for the jury to say, on all the evidence, what was the understanding of the parties as to the liability of the defendants; whether the plaintiff took the note subject to every risk, as well of the solvency of the parties as of the genuineness of the signature of the payee to the endorsement. If he did, the defendants are not responsible: but if, on the other hand, there was no such understanding, the words " without recourse" alone do not, in law, exempt the defendants from responsibility.

On the other points we are not satisfied there was any error. It was the case of a fund deposited in a distant bank, bearing interest at the rate of 6 per cent. per annum, and a variety of parol evidence was given, on which the question of laches in presenting the certificate to the bank for payment, was a mixed question of law and fact, which the jury was to decide under the instruction of the court; and it cannot be said that the time merely was unreasonable. So, on the question of giving notice to the defendants after the plaintiff was informed of the forgery, it was for the jury to say how long it was before such notice was given, it being alleged by the plaintiff that the demand made by Mr Law, on the 31st May 1839, was not the first notice; and also whether the plaintiff, under all the circumstances, had been guilty of such neglect as to forfeit his right. We do not think the time, about two months, of itself sufficient for the court to say he is barred by it. Other circumstances in the case must be considered in connection with it.

Judgment reversed, and *venire facias de novo* awarded.