## Porter *et al.* versus Bright *et al.*

82    441
29 SC ²243

1. In an action brought by the buyer of certain coupon bonds which turned out to be counterfeit, to recover the price from the seller, the court below refused an offer on the part of the defendant to prove that he supposed the bonds to be genuine at the time of the sale; that he had made inquiries about them, and told the plaintiff the result of his inquiries; that the plaintiff, before buying, had also made inquiries and satisfied himself and had then bought the bonds; and that the seller refused to give any guarantee, except that the bonds were not stolen: *Held* to be error.

2. Although in ordinary sales the vendor of a bond impliedly warrants his title, yet, in the absence of concealment or false representation by the vendor, an agreement that the buyer shall assume all the risks of the title is not contrary to law.

3. In this case, *it seems*, that in the sale of coupon bonds the rule of caveat emptor did not apply.

4. Where A. bought certain counterfeit bonds from B. in April 1873, the July coupons having been cut off, and A. did not discover the defect till after January 1st 1874, when he presented the next coupons for payment, and

[Porter v. Bright.]

within a few days, A. tendered back the bonds to B. and demanded the return of the price, *it seems* that A. tendered the bonds within a reasonable time and was not guilty of negligence. ·

October 17th 1876.   Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ.   WILLIAMS, J., absent.

Error to the Court of Common Pleas of *Erie county:* Of October and November Term 1876, No 27.

Assumpsit by John H. Bright and E. G. Benedict, against Anson Porter and others, doing business as the Corry Savings Bank, to recover the amount paid by them for certain coupon bonds of the city of Corry, sold to the plaintiffs by the defendants, which were alleged to have been counterfeit.

The sale to the plaintiffs was made in April 1873.   The defendants, at the time of the sale, cut off and retained the coupons of July 1873; the spurious character of the bonds was therefore not discovered till after the coupons of January 1st 1874 matured. Sometime in January 1874, the plaintiffs tendered the worthless bonds to the defendants, and soon afterwards brought this action.

The only evidence printed in the paper-books was that of the plaintiffs below.   That tended to prove that Bright and Benedict had bought the bonds from the defendants in the ordinary course of business, supposing them to be genuine, without any intimation or suspicion that they were not so, and without any agreement that the buyers should take the risk of the bonds turning out to be counterfeit.   It was admitted that the bonds were counterfeit.

The defence set up was that Bright and Benedict bought the bonds with the knowledge that there might be some defect in them, relying upon their own inquiries as to the genuineness of the bonds, and at their own risk.   To establish this defence the defendants offered evidence to prove that they had bought the bonds supposing them to be genuine, after having made inquiry of the treasurer, mayor and clerk of the city of Corry as to their genuineness, and that at the time of the sale the plaintiffs were informed what these city officers had said as to their genuineness; that the defendants had declined to sell to the plaintiffs until after the plaintiffs had satisfied themselves that the bonds were genuine by making inquiries of these officers; that afterwards the plaintiffs called on the defendants and said they had inquired as to the genuineness of the bonds, and were satisfied from what they had heard that they were genuine; that Anson Porter, one of the defendants, stated to the plaintiffs that he would only sell them the bonds upon information acquired by the plaintiffs themselves, and would guarantee against nothing except their being stolen bonds; and that the bonds were all inspected by plaintiffs before they bought.

The plaintiffs objected to the testimony as irrelevant, and the court sustained the objection.

Among the defendants' points were these:—

[Porter v. Bright.]

6. That in the purchase and sale of the said bonds the law of caveat emptor applies.

"Refused. We think it does not apply to such a transaction."

7. If the jury find from the evidence that the bonds in suit were bought by plaintiffs on the 30th April 1873, and that they did not offer to return the bonds to the defendants until the 19th January 1874, then the plaintiffs have been guilty of negligence and cannot recover in this case.

"We decline so to charge, but leave it to you as a question of fact. If the plaintiffs made known the character of bonds to the defendants within a reasonable time after they discovered it themselves, they were not negligent."

The jury found for the plaintiffs. After judgment the defendants below took this writ of error, assigning for error the rejection of evidence as above shown and the refusal to charge as requested by the defendants.

*Davenport & Griffith*, for the plaintiffs in error.—The jury ought to have been allowed to find what was the agreement between the parties at the time of the sale: Charnley v. Dulles, 8 W. & S. 361; Man v. Drexel, 2 Barr 202; Flynn v. Allen, 7 P. F. Smith 485. The court should have affirmed the seventh point: Raymond v. Barr, 13 S. &. R. 318; Leaming v. Wise, 23 P. F. Smith 176.

*S. P. Johnson*, for the defendants in error.—Flynn v. Allen rules this case. See also Lyons v. Divellis, 10 Harris 285. The offer of the defendants below did not constitute a good defence. The spurious bonds were worthless, and it was not necessary to return them: Beetem v. Buckholder, 19 P. F. Smith 253.

Mr. Justice SHARSWOOD delivered the opinion of the court, October 23d 1876.

We are of opinion that the offer of the defendants below, the rejection of which by the learned court forms the subject of the first assignment of error, ought to have been admitted.

That offer was in substance that the defendants did not know the bonds which they offered to sell the plaintiffs to be counterfeit, but supposed them to be genuine; that they stated to the plaintiffs what they had done themselves to ascertain their genuineness; that the plaintiffs must make inquiry and satisfy themselves upon that point, as they would guarantee against nothing except their being stolen, and afterwards the plaintiffs called on the defendants and said that they had made inquiries and were satisfied from what they had heard that they were genuine, and the sale was then made.

No doubt every vendor of a bond or other instrument of writing warrants impliedly his title in the same manner as the vendor of any other personal chattel does. If the bond is forged, or its assignment is forged, he has no title, and the vendee can reclaim

[Porter *v.* Bright.]

the price he has paid.    It makes no matter whether the vendor knows his title to be bad or not, nor how entirely innocent he may be of any fraud in the transaction.    What he has sold proves to be intrinsically worthless.    But it would be carrying this doctrine entirely too far to hold that in the absence of concealment or false representation by the vendor, the vendee may not agree to assume all the risk of the title.    Why not in the case of the forgery of the instrument as in the case of any other defect of the title, as, for example, that the bond was void for any other reason or that the assignment of it was forged ?    There is nothing to affect such a contract with illegality.    Even in equity a vendee of land under articles cannot set up the failure of consideration in consequence of the vendor's want of title if he expressly agreed to take the risk. " Where the purchaser is aware of a flaw and provides not against it, he takes the risk of it on himself :" Lighty *v.* Shorb, 3 Penna. R. 452.    The case of Charnley *v.* Dulles, 8 W. & S. 353, is an authority in point.    That was the sale of a certificate of deposit issued by a bank payable to the order of J. S. Skinner, whose endorsement was forged.    The vendor had no title, and if the case had there rested the vendee could have recovered back the price. But this court held that the liability of the vendor depended upon the circumstances of the sale, and that it was for the jury to say whether on the evidence the plaintiff took the certificate subject to every risk or not.    The endorsement of the vendor there was " without recourse," but the court held that to be immaterial.    It did not relieve him from the implied warranty of title.    " It was for the jury to say, on all the evidence, what was the understanding of the parties as to the liability of the defendants; whether the plaintiff took the note subject to every risk, as well of the solvency of the parties as of the genuineness of the signature of the payee to the endorsement.    If he did, the defendants are not responsible; but if, on the other hand, there was no such understanding, the words ' without recourse' alone do not in law exempt the defendants from responsibility."    It is very plain that if the evidence proposed to be given by the defendants below had come up to their offer and had been believed by the jury, it would have been sufficient to have justified them in finding that one of the terms of the contract of sale was that the plaintiffs took themselves the risk of the genuineness of the bonds.

The plaintiffs in error have not furnished us with the evidence in the cause, and without it it is impossible for us to say whether there was anything of which to predicate the points of the answers to which the plaintiffs complain in the second, third, fourth and fifth assignments of error.    If the evidence appended to the paper-book of the defendants in error was all the evidence in the cause it certainly was not sufficient to raise these points.    There was no error in the court's not charging as requested by the defendants in their sixth point, " that in the purchase and sale of said bonds the

[Porter v. Bright.]

law of caveat emptor applies," nor in the answer to the seventh point that "if the plaintiffs made known to defendants the character of the bonds within a reasonable time after they discovered it themselves they were not negligent."

Judgment reversed, and a *venire facias de novo* awarded.