## People's Bank *versus* Kurtz.

1. It is well settled that a party selling as his own personal property of which he is in possession, warrants the title to the thing sold, and that if, by reason of defect of title, nothing passes, the purchaser may recover back his money, though there be no fraud or warranty on the part of the vendor. This principle applies as well to choses in action as to any other description of personal property.

2. The vendor of a share of stock impliedly warrants that the same is issued by the duly constituted officers of the company and is sealed with the genuine seal of the corporation. He does not, however, impliedly warrant that such share has not been fraudulently issued by the officers in excess of the charter limit. If this prove to be the case, the vendee has no recourse against him.

3. *Dubitatur*, whether in such case the corporation is bound to permit a transfer on its books and to deliver a new certificate to the bona fide vendee. It may be that it is not obliged so to do.

4. *Semble*, that the bona fide holder of a fraudulent over-issued certificate in such case would have a right of action against the corporation, and that his measure of damages would be the market value of the stock at the time a transfer thereof was demanded by him.

January 11th and 12th 1882. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

ERROR to the Court of Common Pleas No. 2, of *Philadelphia county :* Of January Term 1881, No. 205.

Case stated, by the People's Bank of Philadelphia against William W. Kurtz, trading as W. W. Kurtz & Co., showing the following facts :—

In April, 1875, the People's Bank purchased from the defendant, who was a note-broker, three promissory notes in the following form :—

"$5,000.          PHILADELPHIA, April 12th 1875.

"Four months after date, we promise to pay to the order of S. Gross Fry, five thousand dollars, without defalcation, for value received, having deposited herewith Ctf. No. 515, for eight hundred shares Philadelphia and Darby Railroad stock, as collateral security, which we authorize the holder of this note, up-

[People's Bank *v.* Kurtz.]

on the non-performance of this promise at maturity, to sell either at the Brokers' Board, or at public or private sale, without demanding payment of this note, or the debt due thereon, and without further notice, and apply proceeds, or as much thereof as may be necessary, to the payment of this note and all necessary expenses and charges, holding ourselves responsible for any deficiency.

"(7416)      (Signed)    EMAUS IRON Co.,
                                  " Per S. GROSS FRY, *President.*
" Payable at
      " Due August 12–15th 1875.
                          (Indorsed)          " S.  GROSS  FRY."

The other two notes, dated April 10th and 13th, at four months, were for $6,250, and $5,000, respectively.

The three certificates of the stock of the Philadelphia and Darby Railroad Company, mentioned in the notes pledged as collateral security, stood in the name of W. W. Kurtz & Co. and were delivered with the notes to the plaintiffs, accompanied with blank powers of attorney to transfer the same, duly executed by W. W. Kurtz & Co.

Said notes were protested for non-payment at maturity.

At the time of making the said sales, the defendant was carrying on business as a note-broker, and buying and selling bills and notes on his own account, and he was on this occasion acting as the broker of S. Gross Fry, but this fact was not disclosed or known to the plaintiff at the time of the purchase, who dealt with him as a principal.

At the time of the sale of the said notes, the Emaus Iron Company and S. Gross Fry were in good credit, and the market value of the Darby Railroad stock was about eight dollars per share.

All of said certificates were fraudulently issued by the officers of the said railroad company, and constituted part of an over-issue in excess of the limit allowed by the charter. The certificates were in the usual form, and regular on their face, and were issued by the duly constituted officers of the company, and were sealed with the genuine seal of the corporation.

After the discovery of the over-issue of the stock, which was about May 15th 1875, the market value of the stock fell to less than three dollars per share, which fact was known to both parties.

On the 14th, 16th and 20th days of August, 1875 the plaintiff tendered to the defendant, the notes with the collaterals, the stock heretofore spoken of, and demanded repayment of the money paid for said notes, which demand was refused, and plaintiff also made a subsequent tender some months afterwards,

not later than December 4th 1875, of notes, protests and collateral.

On December 20th 1877, the plaintiff filed a bill in equity in the court of Common Pleas, No. 4, December Term 1877, No. 398, as the holder and owner of said stock, and obtained a decree subsequently against the said company for damages at $2.85 per share.

The said S. Gross Fry, at the time of these transactions and for a long time previous, was president of the Philadelphia and Darby Railroad Company, and of the Emaus Iron Company. He continued to be president of the company up to the time of the discovery of these transactions, about May 15th 1875.

On June 8th 1877, the plaintiff received from the assigned estate of the Emaus Iron Company $1,679.75, and on July 5th 1878, from the assigned estate of S. Gross Fry $257.33, the said Fry and the Emaus Iron Company being insolvent at the time of the maturity of these notes.

If, upon these facts, the court shall be of the opinion that plaintiff was entitled to tender back the notes, then judgment to be entered for the plaintiff for $18,783.51, with interest from November 12th 1880, and costs (plaintiff to assign to the defendant all claim upon notes and stock), otherwise judgment for the defendant. Either party to be entitled to a writ of error.

The court entered judgment upon the case stated for the defendant. No opinion was filed. The plaintiff thereupon took this writ of error, assigning for error the entry of the said judgment.

*Hood Gilpin* and *F. C. Brewster* (*Charles Gilpin* with them), for the plaintiff in error.—The plaintiff's claim to recover rests upon three grounds :—

1. Upon the warranty of the genuineness of the certificates. Where a man sells personal property, he warrants two things, (*a*) that the thing sold is of the same generic character as what he undertook to sell ; in other words, that it is really what it purports to be ; and (*b*) that he had title to it. So with choses in action. If a man agrees to sell a promissory note of John Smith, his agreement is not satisfied by giving a piece of paper with the genuine signature of John Smith, but which is not a promissory note. The defendant here undertook to give us "shares of the capital stock of the Philadelphia and Darby Railroad Company." That agreement was not satisfied by giving us fraudulently over-issued stock, which, though signed with the genuine signatures of the officers, was not stock at all, but a sham ; and it is no answer to say, the sham gives you a right of action against the maker of the sham. The defendant has our money, but we have not the capital stock. We have a right to

[People's Bank v. Kurtz.]

say, take back your sham and give us our money, or else respond in damages: Flynn v. Allen, 7 P. F. Smith 485; Lyons v. Divelbis, 10 Harris 185; Frazer v. D'Invilliers, 2 Barr 200; Charnley v. Dulles, 3 W. & S. 853; Corn Exchange Bank v. Bank of Republic, 28 P. F. Smith 233: Chambers v. Bank, 28 P. F. Smith 205; Tradesmen's Bank v. Third National Bank, 16 P. F. Smith 435. As to our right of action, founded upon the warranty, no rescission, demand and tender were necessary before bringing suit: Flynn v. Allen, supra; Hook v. Robison, Addison 271; Ritchie v. Summers, 3 Yeates 531.

2. The plaintiff is entitled to recover from the defendant as upon a failure of consideration and a rescission of the contract. The right to rescind was exercised within a reasonable time, viz., at the day of maturity of each note. We could not rescind before maturity, as we could not tell that the notes would not be paid. When we did rescind, the relations between Kurtz and Fry had not changed. We did not waive our right to rescind by suing the railroad company. Although the fact of over-issue of stock was then known, no one could tell whether the stock he held was genuine or fraudulent, and we, in common with others, joined in suits against the company to ascertain that fact, and to recover what could be saved out of the general wreck, for the benefit of whom it might concern.

3. In either view, the defendant is liable as the agent of an undisclosed principal—who was dealt with as a principal.

*Samuel Dickson* and *R. C. McMurtrie*, for the defendant in error.—In the case of a sale of a certificate of stock, the seller warrants that he is the owner of the certificate, and that it is a genuine instrument. The fallacy of the argument of the plaintiff in error rests on the significance which he attributes to the word "genuine," as applied to certificates of stock. It really means that the instrument is genuine only in the sense that the corporation is bound by it. The plaintiff in error contends that the seller warrants that the *contract evidenced by it* is a genuine, *i. e.*, a lawful and honest contract of the corporation, and that the corporation has done no act to affect its value. The implied warranty of title and of genuineness, if traced to its origin, will be found to rest on the presumption of superior knowledge on the part of the seller, but where both parties have equal opportunities for knowledge, or where it is impossible for the seller to acquire knowledge, the warranty ceases to apply. Such is the case here. The sellers warranted the liability of the corporation upon the certificate, not that its real value, based upon the assets of the corporation, was and should remain equal to the market value, on the basis of which it was pledged. The plaintiff's title, as against the corporation, was affirmed in their suit

against the corporation, wherein they recovered the actual value of the stock, which was the same as the actual value of the authorized stock.    The holders of the authorized and the unauthorized stock participated equally in the assets.    To hold that the plaintiffs may also recover against their vendor, on the ground that the stock was unauthorized, would put them in a better position than if they had obtained authorized stock : Benjamin on Sales (2d ed.) 516, § 641 ; Hoe *v.* Sanborn, 21 N. Y. 552–55 ; Miller *v.* Fitch, 7 W. & S. 366 ; Parsons on Contracts 596 ; McCoy *v.* Artcher, 3 Barb. (S. C.) 323 ; Wood's Appeal, 11 Norris 379 ; Willis *v.* Philadelphia and Darby Railroad Co., 6 W. N. C. 461 ; Railroad Co. *v.* Schuyler, 34 N. Y. 30 ; Bank of Kentucky *v.* Schuylkill Bank, 1 Pars. Ed. Cas. 180.    Flynn *v.* Allen, relied on by the other side, does not apply, as the obligor in the bond there was not bound at all.    This case is analogous to the sale of a bogus mortgage, genuine as to the execution, but purporting to cover land which has no existence, or to which the mortgagor has no title.    The seller does not warrant the existence of the land or the title.    Or to the case of a warehouse receipt ; the seller does not warrant the existence of the goods in the warehouse, or that it is not a duplicate.    Or to the case of a note, signed by an infant ; or to a bond by a woman secretly married ; or to a railway mortgage bond, where the mortgage is not in existence, or is invalid.    Or to the case of a national bank note, the transferor of which does not warrant that the full amount of reserve has been deposited by the bank in the U. S. Treasury.    Or to the case of a sale of stock in a corporation, which is subsequently dissolved upon quo warranto by the Commonwealth for causes happening previously, as for defects in organization, etc.

The plaintiff's offer of rescission came too late.    It is unreasonable to hold that a broker, who allows the stock to be put in his name, and has the certificate in his possession only long enough to make a sale, should remain indefinitely liable to a purchaser who failed to demand a transfer to his own name : Benjamin on Sales, 415, 452 ; Roth *v.* Crissy, 6 Casey 145 ; Summers *v.* Ritchie, Ib. 147, note ; Rick *v.* Kelly, Ib. 527.

Chief Justice Sharswood delivered the opinion of the Court, January 23d 1882.

It was held at first that in an action on the case for deceit against a party who had sold a personal chattel to the plaintiff, to which he had no title, that it was necessary to aver a scienter : Dale's Case, Cro. Eliz. 44 ; Roswel *v.* Vaughan, Cro. Jac. 196. But this doctrine was subsequently exploded, and an averment of possession considered sufficient, as the vendor must be intended cognizant of his own title, the sale being necessarily an affirmation of title.    Cross *v.* Gardner, Carth. 90 ; Medina *v.*

Stoughton, 1 Ld. Raym. 593.   It may now be regarded as well settled, that a party selling as his own, personal property of which he is in possession, warrants the title to the thing sold; and that, if by reason of defect of title, nothing passes, the purchaser may recover back his money, though there be no fraud or warranty on the part of the vendor.   This doctrine is held to apply to choses in action as well as other descriptions of personal property: Charnley v. Dulles, 8 W. & S. 353.

Shares of stock in a corporation are choses in action, giving a right to dividends and an interest in the capital.   The certificate is the evidence of such ownership, and there can be no doubt that if the certificate is forged, or the holder is not such bona fide, so that he has no claim on the corporation, the vendor would be liable to his vendee on the implied warranty of title.   His possession of the certificate would be as to his vendee possession of the stock, just as possession of a bond or note is possession of the debt which they represent.   Where, however, there has been a fraudulent over-issue of stock, evidenced by certificate under the genuine seal of the corporation, the case presented is somewhat different.   It has been settled, that a corporation is liable to bona fide holders of such fraudulent certificates, because, like individuals, they are responsible for the fraudulent exercise of the power intrusted by them to their officers or agents.   It is unnecessary, in this case, to consider whether they are bound to permit a transfer on their books and to deliver a new certificate to the bona fide vendee.   It may be that when the over-issue is in excess of the amount authorized by the charter, they would not be.   But it seems to be established, upon principle as well as authority, that the bona fide holder of such a fraudulent certificate would have a right of action against the corporation, and that his measure of damages would be the market value of his stock at the time the transfer was demanded: Willis v. Philadelphia & Darby R. R. Co., 6 W. N. C. 461, and cases cited in the opinion of Judge HARE.   The vendor of such a certificate has then a title which he can transfer, and a remedy against the corporation.   Suppose the shares in the case before us had been transferred by an original subscriber, his vendee would have been in the same position as the assignee of shares subsequently issued in excess of the charter.   He would have had a clear right to demand a transfer and new certificate.   Such certificate, however, would have been worth to him only the value of the stock in the market at the time.   If his transfer had been refused, he would be entitled to the same remedy and the same measure of damages.   The vendor of shares of stock certainly does not warrant the solvency of the corporation.   Corporations are especially liable to be made insolvent by the embezzlement and fraud of

their agents or officers. It matters not whether the loss arises from robbery or embezzlement, or by the fraudulent issue of stock, the value of the stock is depreciated. It matters not whether such fraud or robbery was before or after the sale of the stock, the bona fide vendor cannot, under the rule in question, be held responsible for the depreciation in value. It is one of the risks which are assumed by all dealers in such securities. It is agreed in the case stated, that "the certificates were in the usual form, and regular on their face, and were issued by the duly constituted officers of the company, and were sealed with the genuine seal of the corporation." We are of opinion that the implied warranty of title extended no further, and that there was no breach.

Judgment affirmed.