## Commonwealth v. Johnston, Jr., Executor, etc.

*Taxation—Inheritance tax—Shares of stock—Voting trust certificate— Act of June 20, 1919.*

1. Tax laws are construed most strongly against the State and in favor of the taxpayer, and taxes are not imposed beyond the clear import of the language used.

2. Shares of stock are the interest which a stockholder has in a corporation, an incorporeal intangible thing. A certificate of stock or a voting trust certificate is the evidence of ownership or interest and is a tangible corporeal thing.

3. The Act of June 20, 1919, P. L. 521, imposes a tax upon the transfer of "shares of stocks of corporations of this Commonwealth," and also upon the transfer "of any interest therein or income therefrom in trust or otherwise."

4. Shares in a Pennsylvania corporation owned by a New York decedent, and passing under the provisions of his will to other residents of the State of New York, are subject to the Pennsylvania inheritance tax, imposed by the Act of June 20, 1919, P. L. 521, even though such stock is held by a Pennsylvania corporate trustee under a voting trust agreement and remains subject to the trust.

Appeal from appraisement by the Auditor General for transfer inheritance tax. C. P. Dauphin Co., Commonwealth Docket, 1921, No. 5.

*George E. Alter*, Attorney-General, and *George Ross Hull*, Deputy Attorney-General, for plaintiff.

*Hause, Evans & Baker* and *Johnson & Gilkyson*, for defendant.

HARGEST, P. J., April 25, 1922.—This is an appeal from an appraisement by the Auditor General for the purpose of ascertaining the amount of the transfer inheritance tax imposed by law on property belonging to the estate of William A. Johnston, deceased. A stipulation was filed to dispense with a trial by jury, pursuant to the Act of April 22, 1874, P. L. 109.

*Facts.*

The facts, which have been agreed upon, we find to be as follows:

1. William A. Johnston, late of Richmond County, State of New York, died Jan. 14, 1920, having made a will, which was duly admitted to probate in the

Surrogate's Court of said Richmond County on Feb. 7, 1920. By said will he devised and bequeathed all of his property, after the payment of debts and expenses, to his wife, daughter and son, their heirs and assigns, share and share alike. All of the devisees and legatees were, at the time of the decedent's death, and now are, residents of, and domiciled in, the State of New York. The decedent appointed his wife, his son, William Armour Johnston, Jr., and a nephew as his executors.

2. The wife and nephew having renounced and failed to qualify, William Armour Johnston, Jr., became the sole executor of said estate.

3. As such executor, William Armour Johnston, Jr., filed in the office of the Auditor General of Pennsylvania, pursuant to the provisions of the Act of Assembly approved June 20, 1919, P. L. 521, a certified copy of the said will of William A. Johnston, deceased, and an affidavit, with the accompanying schedules, in the form prepared and furnished by the said Auditor General, showing the nature of the property owned by the decedent at the time of his death.

4. Among the items enumerated in said affidavit was the following: "Voting trust certificate issued by Girard Trust Company of Philadelphia, Pa., against 1740 shares of stock in the S. S. White Dental Mfg. Co., a Pa. corporation, said shares being deposited with said trustee pursuant to said voting trust agreement, and decedent's interest therein being subject to such voting trust agreement, market value $174,000."

5. The said voting trust agreement dated June 21, 1915, continued for a period of five years. It contained the usual provisions of such agreements, whereby there are reserved to the depositors the equitable beneficial interest in the shares of stock; the right to receive dividends; the right to approve or disapprove a sale of stock and to receive the proceeds of any sale thereof; the right to vote upon an increase of capital stock or the creation of mortgage or lien indebtedness and the sale of real estate; the right to transfer the interest in the stock subject to the trust agreement; the right, on vote of 90 per cent. of the depositors, to elect a trustee in case of vacancy; the right, on vote of 95 per cent. of the depositors, to terminate the agreement and receive certificates of stock.

The legal title to the stock during the life of the agreement, the management of the ordinary affairs of the company, a limited voting power, the power to sell, provided authority of depositors was given, and provided all the stock be sold together at $200 or more per share, constitute the rights and powers vested in the trustees.

6. The Auditor General settled an account for the tax due on the transfer of the shares represented by the voting trust agreement and standing in the name of the decedent in the sum of $3395.19.

7. The executor appealed from this appraisement and assessment, but raises no question as to the amount of the settlement.

### Discussion.

The Act of June 20, 1919, P. L. 521, provides for the imposition and collection of taxes upon the transfer of property passing from a decedent. Section 1 provides, in part, as follows:

"That a tax shall be, and is hereby, imposed upon the transfer of any property, real or personal, or of any interest therein or income therefrom, in trust or otherwise, to persons or corporations in the following cases: . . .

"(b) When the transfer is by will or intestate laws of real property within this Commonwealth, . . . or of shares of stock of corporations of this Com-

2 D. & C.

monwealth, or of national banking associations located in this Commonwealth, and the decedent was a non-resident of the Commonwealth at the time of his death."

The question is whether a tax is imposed upon the transfer of the shares of the stock of the S. S. White Dental Manufacturing Company represented by the voting trust certificate. The defendant argues that the act of assembly must be construed strictly and its language must be taken most strongly against the State, and, inasmuch as the act does not in terms impose a tax upon the equitable interest of a *cestui que trust* in a situation such as that presented here, no tax is imposed or collectible.

It is undoubtedly true that tax laws are construed most strongly against the State and in favor of the taxpayer, and taxes are not imposed beyond the clear import of the language used. The question in this case is whether the shares of stock represented by the voting trust certificates are within the clear import of the language used in this act of assembly.

There is a distinct difference between "shares of stock" and "certificates of stock." "A share of stock is an incorporeal intangible thing. It is a right to a certain proportion of the capital stock of a corporation—never realized except upon the dissolution and winding up of the corporation—with the right to receive, in the meantime, such profits as may be made and declared in the shape of dividends. . . . But the document or writing which is the evidence of ownership is a tangible corporeal thing:" Neiler v. Kelly, 69 Pa. 403.

"A share of the capital stock of a corporation may be defined as the interest or right which the owner, who is called the 'shareholder' or 'stockholder,' has in the management of the corporation and in its surplus profits, and, on a dissolution, in all of its assets remaining after the payment of its debts. . . . The equitable interest of the shareholder in the property of the corporation is represented by the term 'stock,' and the extent of his interest is described by the term 'shares.' The expression 'shares of stock,' when qualified by words indicating number and ownership, expresses the extent of the owner's interest in the corporation property:" 5 Fletcher, Cyc. of Corp., § 3417.

"A certificate of stock is . . . not the stock itself, but evidence of the ownership of the stock; that is to say, it is a written acknowledgment by the corporation of the interest of the stockholder in the corporate property and franchises; it operates to transfer nothing from the corporation to the stockholder, but merely affords to the latter evidence of his rights. It should be clearly understood that the certificate is not the stock, but merely written evidence of the ownership of stock:" Cook on Corp., § 13; 5 Fletcher, Cyc. of Corp., § 3425; People's Bank v. Kurtz, 99 Pa. 344, 349.

Therefore, "shares of stock" are the interest which the stockholder has. A "certificate of stock" or a "voting trust certificate" is only the evidence of the interest. The Act of June 20, 1919, P. L. 521, imposes a tax upon the transfer "of shares of stocks of corporations of this Commonwealth." But it not only imposes a tax upon the transfer of the "shares," but also upon the transfer "of any interest therein or income therefrom, in trust or otherwise."

Before the voting trust agreement was entered into in this case, William A. Johnston owned the stock in question and every interest in it. Let us examine how the situation was changed when the trust agreement was executed. That agreement provides that the stockholders agree with each other and the trustees "to deposit and transfer to the trustees all their respective holdings of the company's stock in trust," and the trustees declare that they hold the same under the terms of the trust, and thereupon the trustees executed to the stockholders the voting trust certificates representing the shares

of stock. When that transaction was complete, the trustees had the legal title to the stock and the right of management of the ordinary affairs of the company, and practically nothing else. All of the monetary value remained in the depositors, the holders of the voting trust certificates. Every beneficial interest, including the right to receive dividends or the proceeds of a sale, if any such were made, and every other right incident to the stock, continued to vest in the depositors who were the former stockholders. The net result of the transaction was that the stockholders surrendered some of the incidents which attached to their shares, but retained the valuable interests in those shares. Can it be said, to use the very language of the Act of 1919 imposing this tax, that no "interest therein," "in trust or otherwise," of these shares of stock has been transferred by the will of the decedent? In Com. v. Westinghouse Airbrake Co., 251 Pa. 12, Mr. Justice Elkin said (page 16): "The law regards the substance and not the form, and this is especially true in the construction and administraton of taxing statutes."

We think that, applying this principle to this case, the shares of stock represented by the voting trust certificates are "shares of stock of a corporation of this Commonwealth" within the meaning of paragraph (b), section 1, of the Act of 1919, even without invoking the language of the first part of the section, which imposes the tax upon the transfer, not only of the property, but also "of any interest therein," "in trust or otherwise."

In United States Radiator Co. v. State, 135 N. Y. Supp. 981, it is held, for the purposes of the stock transfer tax, a voting trust certificate is the same as a stock certificate.

In 3 Fletcher's Cyc. of Corp., § 1719, it is said: "It has also been held that the beneficial owner of shares of stock of an insolvent corporation, whose sole evidence of title to such stock is a voting trust certificate held by him subject to an agreement giving to the voting trustees during the term of the agreement 'all rights of every name and nature, including the right to vote in respect of any and all of such stock,' is a stockholder of the corporation within the meaning of a statute authorizing stockholders to institute proceedings to wind up the business of an insolvent corporation:" O'Grady v. United States Independent Tel. Co. (N. J. L.), 71 Atl. Repr. 1040.

Suppose there was a single trustee under this voting trust agreement. In the event of his death, no tax would be collectible for the transfer of his interest to his successor, because no interest would pass by will or under the intestate laws, and also because the trustee's interest had no value. The contention of the defendant, therefore, leads to the conclusion that the legislature intended to relieve from the transfer tax any shares of stock represented by voting trust certificates, because the interest of the trustees could not be taxed, inasmuch as it had no value, and for the further reason that it does not pass by will or under the intestate laws, and the beneficial interest of the owner could not be taxed because he has parted with the legal title and some of the incidents which attach to the shares. We do not think that the legislature intended any such conclusion.

Moreover, the tax was imposed on the interest in the shares represented by the voting trust certificates, and it must be assumed that whatever incidents were carved out of the shares of stock by the voting trust agreement were taken into consideration, and that the Auditor General assessed the tax upon the value of the shares as affected by the voting trust agreement and as represented by the voting trust certificate.

For these reasons, we are of opinion that the 1740 shares of stock of the S. S. White Dental Manufacturing Company, represented by the voting trust

2 D. & C.

certificates issued under the voting trust agreement above referred to, are subject to a tax upon the transfer thereof by the will of the decedent, and that the tax was properly assessed and imposed thereon.

There is no question raised as to the amount of the tax. Section 38 of the Act of June 20, 1919, P. L. 521, allows payment within one year from the date of the death without the imposition of interest, and where the payment is delayed beyond that period for unavoidable reasons, interest is chargeable at 6 per cent. instead of 12 per cent. We think that where there is *bona fide* litigation to test the right to tax, the interest should be at the rate of 6 per centum.

| | |
|---|---|
| Amount of appraisement | $3395.19 |
| Interest from Jan. 14, 1921 | 254.64 |
| Total | $3649.83 |

Therefore, judgment is hereby directed to be entered in favor of the Commonwealth and against William Armour Johnston, Jr., executor of the estate of William A. Johnston, deceased, in the sum of $3649.83, unless exceptions be filed within the time limited by law.

From William Jenkins Wilcox, Harrisburg, Pa.