## Universal C. I. T. Credit Corp. v. Green

*William F. Martson*, for plaintiff.
*Faller. & Douglas*, for defendant.

SHUGHART, P. J., August 11, 1958.—The above action in assumpsit was instituted by the filing of a complaint, but after depositions of some of the witnesses were taken, it has been presented to the court for decision as a case stated after argument on July 22, 1958.

It appears that on June 15, 1951, one Shirley A. Melick entered into an agreement with defendants, automobile dealers, for the purchase of a 1946 Packard car. In order to arrange for financing Miss Melick completed an application for credit. In a space on the application provided therefor she stated her age as 21. When the application was completed, the information contained therein was conveyed to plaintiff's Harrisburg office by telephone. The only contact plaintiff had with Miss Melick through any of its agents or employes was by telephone; they did not see her or talk with her personally and the signed application did not reach plaintiff until the bailment lease that she executed was received.

Plaintiff on receipt by telephone of the information on the credit application sent the following telegram to its office in Denver, Colo., requesting an investigation of the applicant:

"Rush Complete Investigation Shirley A. Melick Employment Elrancho Woodcraft Credit Reference Lakewood Auto Finance Majestic Motors Cooperative Inglewood Previous Employer Sunglo Venetian Blinds Signed C. I. T. Credit Corporation."

On June 19, 1951, the following telegram was received by plaintiff's Harrisburg office from the office in Denver:

"Retelegram Shirley A. Melick Employment Elrancho Satisfactory Lakewood Auto Finance Satisfactory Majestic Motors Mtns Cash Deal Universal C. I. T."

Thereafter, plaintiff indicated its acceptance of the credit application and on June 19, 1951, Miss Melick executed and delivered to defendants a Pennsylvania bailment lease for the car which was then turned over to her. On the same date the bailment lease was assigned by defendants to plaintiff. The first payment under the lease was due July 19, 1951, but no payments were ever made. On the contrary, on September 9, 1951, Miss Melick appeared at plaintiff's office in Denver, Colo., stated that she was a minor and repudiated the contract. On September 12, 1951, plaintiff notified defendants of such repudiation and of its intention to rescind the assignment and to return the bailment lease upon receipt from defendants of the consideration of $800 given by plaintiff to defendants for the assignment. Upon failure of defendants to repay the sum of $800, this action was brought.

Plaintiff's rescission of the assignment is based on the provision in the assignment in which defendants stated: "We hereby sell and assign the lease . . . *without recourse* as to Lessee's obligation of payment . . . We *warrant that . . . the Lessee is not a minor and has capacity to contract: . . .*" (Italics supplied.)

Defendants contend that plaintiff cannot prevail: First, because it is estopped from relying on defendants' warranty of capacity of lessee to contract because of the fact that it made its own investigation; secondly, because the return of the car by plaintiff to defendants is a prerequisite to any recovery because of the provisions of the Retail Protection Agreement for Automobile Dealers, the provisions of which will be hereinafter mentioned.

It is clear that defendants' endorsement "without recourse" meant that defendants assumed no liability in the event of nonpayment by Shirley A. Melick: Craft v. Fleming, 46 Pa. 140. It therefore appears that plaintiff had the responsibility by its investigation to ascertain if Miss Melick was generally a good credit risk which, from the telegram, it apparently did by checking her employment and one other finance company.

On the other hand, the assignment without recourse does not exempt the assignor from liability if the instrument turns out to be invalid for any reason: Charnley v. Dulles, 8 W. & S. 353; Frazer v. D'Invilliers, 2 Pa. 200, 201. Therefore, the assignment without recourse was in no way inconsistent with defendants' warranty that the lessee was not a minor.

Defendants' counsel has cited no case nor has our own research revealed any where an express warranty of capacity of the maker was nullified because the assignee had an opportunity to investigate the capacity of the maker. It has been specifically held that an indorsement without recourse does not put subsequent holders on inquiry as to defenses existing between prior parties: Packard v. Woodruff, 57 Pa. Superior Ct. 176, 179.

To reach the conclusion contended by defendants would require us to rewrite the contract between plaintiff and defendants. The investigation made by plaintiff was necessitated because by the assignment without recourse it devolved upon plaintiff to determine if the lessee was a good "credit risk." It was not called upon to ascertain if the lessee had capacity to contract because it had the warranty of that fact by defendants who saw and talked with the maker of the instrument. Whether plaintiff could have relied upon the warranty and the hope that Miss Melick although a minor would pay, if its agents actually knew of her minority, we

are not called upon to decide. Defendants contend only that plaintiff should have known of her minority because of the opportunity it allegedly had to ascertain her true status. It is not contended that plaintiff actually knew or learned of her minority. This fact distinguishes the present case from Midland Loan Finance Co. v. Madsen, 217 Minn. 267, 14 N. W. 2d 475, 481, cited by defendants. In that case it was held that the finance company could not rely on the express warranty of a bona fide contract because the company knew of the presence of usurious interest, as they actually computed it, and, therefore, could not rely on the warranty. In Beckett v. F. W. Woolworth Co., 376 Ill. 470, 34 N. E. 2d 427, cited by defendants, there is dicta to the effect that the purchaser of mascara had to rely on an express warranty but the true basis of the decision lay in the fact that the statements contended to constitute a warranty were made after the completion of the sale.

In regard to sales of chattels it appears to be well established that: "One who examines an article himself and relies on his own judgment may at the same time protect himself by taking a warranty upon which he also relies": 46 Am. Jur. 495, 496, §313.

Where a "vendee does exact a warranty and one is given by the vendor, he may recover for a breach thereof, even though he made a personal examination of it before purchase and declared his satisfaction therewith. . . . '. . . a vendee may realize his liability to mistake in judgment, or otherwise, and demand a warranty as a cautionary measure.' '. . . It cannot be said, as a matter of law, that because a vendee sees and inspects personal property he may not also exact a warranty' ": J. A. Tobin Const. Co. v. Davis, (Mo. App.), 81 S. W. 2d 474, 478.

It is equally true here in regard to the sale of a chose in action that the fact that plaintiff made an

investigation does not preclude its right to demand an express warranty covering some of the things it might discover on investigation.

There were, perhaps, practical reasons why the responsibility for ascertaining the contractual capacity of Miss Melick should have rested with plaintiff who had a better opportunity to determine her status; nonetheless, by the contract of the parties, the responsibility was made to rest with defendants who had the only direct personal contact with her. We cannot strike down the contract because hindsight has shown its provisions to be improvident.

The second contention of defendants is that plaintiff cannot recover because a provision of the Retail Protection Agreement for Automobile Dealers, which defendants executed as a part of the contract, provided that defendants would only purchase from plaintiff repossessed or recovered cars that were "tendered at our place of business within 90 days after maturity of the earliest instalment still unpaid." It is clear that this provision dealt with the situation where there was a default in payments under a valid contract. This provision constitutes a qualification on the provision for assignment "without recourse" and has no application here where the relief sought is rescission of the assignment for breach of the express warranty of capacity of the lessee to contract.

While there may be strong reasons for the parties to have made a different type of agreement and to have made plaintiff responsible to determine the lessee's contractual capacity, it is very clear that the contract itself places that responsibility upon defendants. Plaintiff is, therefore, entitled to judgment in its favor.

And now, August 11, 1958, at 10 a.m., for the reasons given, judgment be and is hereby entered in favor of plaintiff and against defendants in the amount of $800 with interest from June 19, 1951. An exception is noted for defendants.